UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| **TYRONE JOHNSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No.** |
| **v.** | ) | **24-12766-FDS** |
| | ) | |
| **SUFFOLK UNIVERSITY,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

MEMORANDUM AND ORDER ON
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**SAYLOR, J.**

This is an employment-discrimination case.  Plaintiff Tyrone Johnson is a former police

officer with the Suffolk University Police Department.  He was terminated from the department

in December 2023 following an investigation into allegations of domestic violence against his

wife.  He sued Suffolk University, contending that the basis for his termination was pretextual,

and that his firing was in fact the product of discrimination based on his race and age in violation

of Mass. Gen. Laws ch. 151B and Title VII of the Civil Rights Act of 1964.[1]  He also alleges that

---

[1] The complaint asserts claims only under ch. 151B and Title VII.  Title VII does not prohibit age
discrimination; the federal prohibition on age discrimination is instead contained in the Age Discrimination in
Employment Act, 29 U.S.C. § 623.  *See Hussain v. Hosking*, 2016 WL 696095, at *3 (D. Mass. Feb. 19, 2016).
Defendants did not seek summary judgment on this issue, however, and it is ultimately immaterial to the Court's
resolution of the motion.

Furthermore, although the complaint occasionally refers to plaintiff having some unspecified "disabilities,"
it does not explain what those disabilities are, nor does plaintiff's opposition address the disability discrimination
issue.  (*See* Compl. ¶¶ 4, 35, Dkt. No. 1).  Accordingly, the Court will address only the race and age discrimination
claims.

he was fired in retaliation for his service as president of the police union.[2]

Plaintiff does not allege that anyone in the police department made discriminatory comments; that there was a culture or systemic practice of discrimination; or that he was retaliated against for reporting discriminatory practices within the police department. Instead, and in substance, the complaint is based on a claim of disparate treatment—specifically, the contention that similarly situated white officers within the department were subject to less serious discipline for similar offenses.

Defendant has moved for summary judgment, asserting that the decision to terminate plaintiff was based solely on the determination that he had in fact assaulted his wife and later lied about the incident during an internal investigation. For the reasons that follow, the motion for summary judgment will be granted.

I.    **Background**

A.    **Factual Background**

Tyrone Johnson is a 57-year-old African-American man. He first joined the Suffolk University Police Department as a patrol officer in 1990. (Defendant's Statement of Material Facts ("Def.'s SMF") ¶¶ 7, 9, Dkt. No. 23).[3] By the time he was fired, he had been promoted to Master Patrol Officer. (*Id.* ¶ 9).

On September 11, 2023, officers with the Lynn Police Department were dispatched to Johnson's home following a call from one of his neighbors who reported that he heard Johnson's wife screaming. (*Id.* ¶ 19). When officers arrived, Johnson's wife, Lucia Johnson, told the

---

[2] Plaintiff did not address this allegation, or provide supporting evidence, in his opposition, and accordingly that argument is waived.

[3] Johnson was 57 when the complaint was filed in October 2024, so he was either 56 or 57 when the relevant employment action was taken in December 2023. (Compl. ¶ 3).

officers that she and Johnson had argued, he had pushed her against a wall with his stomach, and that he had locked her in a closet. (*Id.* ¶ 21). Johnson declined to speak with the officers at the scene. (*Id.* ¶ 22).[4] As a result of Lucia's statements, Johnson was arrested, taken to the police station, and charged with assault and battery on a family or household member. (*Id.* ¶ 23).

Once at the station, Johnson gave a statement to the police. (*See* Dkt. No. 26-4). After being read his *Miranda* rights, Johnson "show[ed]" the officer "the bite mark he had . . . on the right side of his stomach." (*Id.*). In his telling, after "overhear[ing] a conversation [Johnson] was having with his tenant downstairs," Lucia "arrived home intoxicated and angry." (*Id.*). "At some point," Johnson said, "he was standing in the hallway between the bathroom, kitchen, and dining room, and [Lucia] approached him and bit his stomach." (*Id.*). Johnson then "grabbed her by the arms and said he was done." (*Id.*).

Later that evening, Johnson informed Captain Gerard Colletta of the SUPD of his arrest. (Def.'s SMF ¶ 26). On November 13, 2023, Chief Jim Connolly of the SUPD directed Colletta to conduct an internal-affairs investigation of Johnson's actions. (*Id.* ¶ 27).

Colletta reviewed the police report; reviewed the body-camera footage from the officers who responded to the call; interviewed the neighbor who called the police; and interviewed Johnson twice. He then detailed his findings to Connolly in a memorandum dated November 21, 2023. (*Id.* ¶ 28; Dkt. No. 26-8).[5]

After reviewing the evidence, including recounting the details of his two interviews of Johnson, Colletta reached the following conclusions:

> It is clear from my investigation that on Monday, September 11, 2023, at about 3:20 p.m. Officer Tyrone Johnson and his wife engaged in a verbal argument in

---

[4] In his affidavit, Johnson contends that Lucia "bit [him] on [his] chest" at some point during the altercation. (Johnson Aff. ¶ 11, Dkt. No. 29).

[5] Lucia Johnson declined to speak with Colletta as part of the investigation process. (Dkt. No. 26-8 at 2-3).

their home.  According to Ms. Johnson, the argument escalated, and Officer Johnson physically assaulted her by pushing or shoving her against a wall, then pushed her forcefully into a closet and locked the door.  Officer Johnson pushed her into the closet with enough force that she fell against the rear wall of the closet and her hand went through the sheet rock wall.

Officer Johnson denies that a physical confrontation occurred s[t]ating that he did not push or shove Ms. Johnson but merely "extended" her away from him. Officer Johnson also stated several times that he didn't recall or remember anything happening in the bathroom.

Given the facts and circumstances outlined above, Officer Johnson's denial that he physically assaulted Ms. Johnson, and his assertion that he didn't remember an interaction in the bathroom or locking Ms. Johnson in the closet are not credible.

Officer Johnson acknowledged that he put his hands on Ms. Johnson's upper arms but denied that he "grabbed" them.  Similarly, Officer Johnson said that he "extended" Ms. Johnson away from him (and toward the wall) but did not push or shove her.  Officer Johnson's description of the events is in direct conflict with Ms. Johnson's description of the events, and is more likely an attempt to minimize the forcefulness of his actions.

Ms. Johnson was very clear in her description of the confrontation in the bathroom and described, in detail, being forced into the closet, striking the wall, and the door being locked.  Her account is corroborated by the hole in the wall and by the statement of the witness, [the neighbor], that she heard two people arguing about opening the locked door.

Additionally, Officer Johnson[] stated that he didn't know there was a lock on the closet door.  He also stated that he'd lived in that apartment for 30 years, yet he still states that he didn't know there was a lock on the closet door.  He then contradicts himself by stating that the lock was put in backwards by his first wife because she didn't want the kids to lock themselves in.

Considering the above circumstances, I respectfully suggest that Officer Johnson violated Suffolk University and SUPD policies, including the following provisions of the SUPD Code of Conduct:

1. Criminal Conduct (Section III, D, 4)
2. Conduct Unbecoming an Officer (Section III, D, 2)
3. Abusive Treatment, Harassment or Discrimination (Section III, D, 1)
4. Truthfulness (Section III, C, 34)
5. Law Enforcement Code of Ethics (Section III, A, 3)

Accordingly, I recommend that this complaint be SUSTAINED.

(Dkt. No. 26-8 at 6).

4

After the memorandum was submitted, Colletta, Connolly, and Sheila Calkins, a special advisor to Suffolk's president and its director of Title IX and Clery Act compliance, discussed what sanction Johnson would receive.  (Def.'s SMF ¶¶ 40-41; Connolly Aff. ¶¶ 23-24, Dkt. No. 25).  They focused on both "the nature of [Johnson's] conduct during the [i]ncident and his false statements during the [internal-affairs] investigation."  (Connolly Aff. ¶ 24).  They concluded that "credible evidence supported the conclusion that [Johnson] had physically assaulted his wife and then been untruthful about it to his superiors," and that this conduct "undermined [Johnson's] ability to perform his duty as a police officer and impacted his credibility in the Suffolk community and as a potential witness."  (*Id.* ¶¶ 25-26).  As a result, the three agreed that Johnson's termination "was necessary and justified."  (*Id.* ¶ 27).

On December 6, 2023, Connolly informed Johnson that Suffolk was terminating his employment and provided him with a written Notice of Termination.  (Def.'s SMF ¶¶ 45-46).  The Notice of Termination stated, in relevant part:

> The [internal-affairs] investigation revealed that there was credible evidence that you and your wife engaged in a verbal argument that escalated into a physical confrontation during which you assaulted your wife and locked her in a closet in a bathroom in your residence.  These actions resulted in your arrest by officers of the Lynn Police Department.  Additionally, the investigation revealed that statements you made, which contradicted statements of your wife and an independent witness, were not credible.
>
> Accordingly, I hereby find sufficient facts and information to sustain a complaint that you violated Suffolk University and SUPD policies, including the following provisions of the SUPD Code of Conduct:
>
> 1. Criminal Conduct (Section III, D, 4)
> 2. Conduct Unbecoming an Officer (Section III, D, 2)
> 3. Abusive Treatment, Harassment or Discrimination (Section III, D, 1)
> 4. Truthfulness (Section III, C, 34)
> 5. Law Enforcement Code of Ethics (Section III, A, 3)
>
> Each of the foregoing is an independent basis for termination.  As [a] result of your actions, and regardless of the outcome of the criminal proceeding against you, and in accordance with the discipline provisions of *General Order 52.1.1*

5

*Internal Affairs*, I am hereby informing you that you are terminated from employment with Suffolk University and the Suffolk University Police & Security Department effective today, December 6, 2023.

(Dkt. No. 26-7 at 3).[6]

### B.    Procedural Background

Plaintiff filed a complaint in Norfolk Superior Court on October 15, 2024.  (Dkt. No. 1 at 5).  Defendant removed the case to this court on November 1, 2024, on the basis of federal-question jurisdiction over the Title VII claims.  (Dkt. No. 1 at 1-2).

Defendant has now moved for summary judgment on all claims.

### II.    Legal Standard

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial."  *Burt v. Board of Trs. of Univ. of R.I.*, 84 F.4th 42, 59 (1st Cir. 2023) (quoting *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir. 1990)).  Summary judgment shall be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine issue is "one that must be decided at trial because the evidence, viewed in the light most flattering to the nonmovant, would permit a rational factfinder to resolve the issue in favor of either party."  *M.L. ex rel. D.L. v. Concord Sch. Dist.*, 86 F.4th 501, 510 (1st Cir. 2023) (quoting *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990)) (citation modified).  In evaluating a summary judgment motion, the court indulges all reasonable inferences in favor of the nonmoving party.  *See O'Connor v. Steeves*, 994 F.2d 905, 907 (1st Cir. 1993).  When "a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial."  *Anderson v. Liberty Lobby*, Inc.,

---

[6] The criminal charge was later dismissed for failure to prosecute.  (Dkt. No. 30-1 at 4).

477 U.S. 242, 250 (1986) (citation modified).  The nonmoving party may not simply "rest upon mere allegation or denials of his pleading," but instead must "present affirmative evidence."  *Id.* at 256-57.

### III.   Analysis

The complaint asserts disparate-treatment claims under Mass. Gen. Laws ch. 151B and Title VII.  "Massachusetts courts borrow from federal law and employ a framework similar — but not identical — to that established in *McDonnell Douglas Corp. v. Green* when analyzing chapter 151B disparate-treatment claims in which there is no direct evidence of discrimination." *Diaz v. City of Somerville*, 59 F.4th 24, 28 (1st Cir. 2023) (citation omitted).  As under federal law, a plaintiff must first make out a *prima facie* case of discrimination by showing that "(1) he is a member of a class protected by ch. 151B; (2) he performed his job at an acceptable level; and (3) he was terminated."  *Bulwer v. Mount Auburn Hosp.*, 473 Mass. 672, 681 (2016) (quoting *Blare v. Husky Injection Molding Sys. Bos., Inc.*, 419 Mass. 437, 441 (1995)) (citation modified). The burden then shifts to the employer, who can rebut the presumption created by the *prima facie* case by "articulating a legitimate, nondiscriminatory reason for its employment decision." *Id.* (citation modified).  At the third stage, where the burden shifts back to the plaintiff, the federal and state analyses diverge.  Under federal law, "a plaintiff pressing a Title VII claim must at a minimum present evidence of animus"—that is, that the employer's stated reason for the employment decision is a pretext disguising discriminatory animus.  *See Diaz*, 59 F.4th at 29. Massachusetts, however, is a "pretext only jurisdiction," meaning that a plaintiff need only show that an employer's stated reasons for the employment action were not its true ones, not necessarily that they were a pretext to hide discriminatory animus.  *See Bulwer*, 473 Mass. at 681-82.

A Title VII claim thus requires proof of the same elements as a Chapter 151B claim, plus an additional one:  that defendant's stated reason for its employment action was not merely pretextual, but was in fact covering for discriminatory animus.  As a result, if plaintiff's state-law claim fails, his Title VII claim necessarily fails as well.

The parties do not contest that plaintiff has made out a *prima facie* case of discrimination on the basis of race, and plaintiff does not seriously contest that defendant has identified a legitimate reason for terminating him—its conclusion as to the domestic-violence incident and his subsequent dishonesty during the investigation.  (Dkt. No. 22 at 12; Dkt. No. 28 at 12).  As a result, the remaining issue is whether plaintiff has provided sufficient evidence to suggest that defendant's stated reasons for terminating him were pretextual.

As noted, plaintiff's claim of discrimination is based entirely on a theory of disparate treatment.  He seeks to show such a disparity by identifying comparators—that is, persons that he contends were similarly situated to him, apart from the relevant protected characteristic, and who were subject to different disciplinary action.  "The most probative means of establishing that the plaintiff's termination was a pretext for racial discrimination is to demonstrate that similarly situated . . . employees were treated differently." *Matthews v. Ocean Spray Cranberries, Inc.*, 426 Mass. 122, 129 (1997).

Massachusetts has "adopt[ed] the approach taken by Federal courts under Title VII" for identifying whether a comparator is "similarly situated" in the context of a ch. 151B claim. *See id.* When evaluating whether a purported comparator is in fact similarly situated, "reasonableness is the touchstone:  while the plaintiff's case and the comparison cases that he advances need not be perfect replicas, they must closely resemble one another in respect to relevant facts and circumstances." *Diaz*, 59 F.4th at 32 (quoting *Conward v. Cambridge Sch.*

8

*Comm.*, 171 F.3d 12, 20 (1st Cir. 1999)) (citation modified).  As relevant here, a police officer who commits misconduct is not similarly situated to one who commits the same misconduct and later lies during an internal investigation into the incident.  *See id.* at 32-33.  As the Court of Appeals recognized, "[r]emoving an important ingredient of that mixture [of conduct] (say, untruthfulness about what happened or the presence of violence) renders any proposed comparison inappropriate."  *Id.* at 33.

Plaintiff points to what he says were comparable actions involving white officers who were treated differently.  One alleged comparator is Officer Michael McCartney, who is white. (Def.'s SMF ¶ 60).  Plaintiff notes several incidents for which Officer McCartney was disciplined, including "using his 'police phone'" to access dating apps; heavy alcohol consumption; and a 2008 incident in which he "thr[ew] a beer against the wall" in his home, for which he was later arrested for domestic violence but was allowed to "clear[] up" the case.  (*See* Dkt. No. 28 ¶¶ 13-18).[7]  The most discipline McCartney ever received for these incidents was a one-day suspension.  (*Id.* ¶ 13).

Nothing in the record, however, indicates that McCartney lied during an internal investigation into these incidents.  Moreover, McCartney's domestic-violence incident occurred in 2008, fifteen years before plaintiff's incident, and under an entirely different command staff, further diminishing its probative value as comparator evidence.  (*See* Dkt. No. 30-6).

Plaintiff also raises the example of Sergeant Matthew Knowles, who is also white, and who faced discipline for several incidents in 2017, 2020, 2024, and 2025, none of which involved domestic violence.  (*See* Dkt. No. 28 ¶¶ 19-24).  There is some evidence he may have

---

[7] There is no evidence that McCartney actually assaulted the victim, as defendant's investigation found that Johnson did here.

lied to investigators, although the exhibit that plaintiff cites in support of the contention that this incident involved dishonesty found that there was "not sufficient evidence to support this allegation." (Dkt. No. 30-9 at 3).

Under *Diaz*, to be similarly situated, a would-be comparator must have committed the same or a similar offense—here, one involving domestic violence—and then later lied about it during the investigation. *See Diaz*, 59 F.4th at 32-33. Neither McCartney nor Knowles falls into this category. McCartney was involved in a domestic violence incident fifteen years earlier, but there is no evidence that he lied about it to investigators. Knowles was involved in an incident where he may have lied to investigators, but it did not involve domestic violence. Accordingly, neither is a proper comparator in support of plaintiff's discrimination claim.[8]

Plaintiff also cites, in passing, several other officers as potential comparators. (Dkt. No. 28 at 16-17). But he does nothing to explain why they are similarly situated beyond offering one sentence with vague allegations about each. His arguments as to those individuals are likely waived. *See Bank of N.Y. Mellon v. Lezdey*, 2014 WL 4656585, at *4 (D. Mass. Sep. 10, 2014) ("Contentions that are not developed or supported in a party's submissions are deemed waived."). And even if the arguments were not waived, plaintiff does not point to any admissible evidence in the record that supports his contentions about those officers. A party opposing summary judgment "must present definite, competent evidence demonstrating that a trialworthy issue exists." *Steiner v. eBay, Inc.*, 795 F. Supp. 3d 144, 158 (D. Mass. 2025) (citation modified).

---

[8] To be sure, the SJC has recognized that "a comparator's circumstances need not be identical to those of the [plaintiff]" to be legally relevant. *See Trustees of Health & Hosps. of City of Bos., Inc. v. Mass. Comm'n Against Discrimination*, 449 Mass. 675, 682 (2007). But a comparator's circumstances must be "substantially similar to those of the [plaintiff] in all relevant aspects concerning the adverse employment decision"—which, for the reasons described above, McCartney and Knowles's circumstances are not. *See id.* (citation modified).

Finally, although the complaint alleges age discrimination, plaintiff has offered no evidence, direct or indirect, in support of that claim.  Among other things, there is nothing in the record as to the age of McCartney, Knowles, or the other potential comparators.

Accordingly, plaintiff has failed to provide sufficient evidence of a similarly situated comparator to suggest that defendant's stated nondiscriminatory reason for his termination was pretextual.  Again, while the comparisons need not be perfect, they must be sufficiently similar to support a reasonable inference that the employment action was discriminatory.

Plaintiff also makes two subsidiary arguments in opposition to defendant's motion for summary judgment:  (1) that the criminal case arising out of the domestic-violence incident was dismissed and (2) that defendant failed to follow its own policies at several points during the proceedings against him.

It is true that the criminal case against him was ultimately dismissed.  Nonetheless, that fact is irrelevant.  The criminal charge was dismissed on February 6, 2024, based on the Commonwealth's failure to prosecute.  (Dkt. No. 30-1).  That dismissal occurred two months after plaintiff was terminated.[9]  The determination whether a given reason for an employment action was pretextual must be made based on the information available to the employer at the time the action was taken.  Defendant could not have known with any certainty that the criminal charge would ultimately be dismissed.  Furthermore, and in any event, the Notice of Termination from Suffolk explicitly stated that the decision to terminate plaintiff was being made "regardless of the outcome of the criminal proceeding against [him]."  (Dkt. No. 26-7 at 3).  Based on that statement, the fact that the criminal charge was dismissed does not tend to show that the decision

---

[9] The criminal charges were dismissed on February 6, 2024, while plaintiff was terminated on December 6, 2023.  (Dkt. No. 30-1 at 3).

to terminate him was pretextual.

Finally, plaintiff contends that defendant violated its own policies in several ways during the investigation.  He first asserts that defendant did not follow its own policy concerning what constitutes "criminal conduct" because "it is a material fact that [plaintiff] did not violate any federal, state, or local law."  (Dkt. No. 28 at 17).  That, of course, is not what the record shows. It is true that Johnson was not *convicted* of violating any law, but the record certainly does not conclusively show that he did not violate any state law, and nothing in the wording of the policy requires a conviction to constitute a violation.[10]

Plaintiff also contends that defendant did not follow its policy concerning duty-status hearings and "treated [him] differently than other white officers, command staff and SUPD security staff."  (Dkt. No. 28 at 18).  But he does not support that conclusory assertion with any evidence, or even any explanation as to which portion of the policy concerning duty-status hearings defendant failed to follow, or how such hearings were handled differently for white officers.  In the absence of evidence, a mere conclusory assertion is not sufficient to oppose summary judgment.  *See Steiner*, 795 F. Supp. 3d at 158.

For the foregoing reasons, defendant is entitled to summary judgment on plaintiff's disparate-treatment claims under both ch. 151B and Title VII.  And although the complaint includes allegations concerning retaliation, he does not address retaliation in his opposition to defendant's motion for summary judgment.  Therefore, to the extent that the complaint asserts a separate claim for retaliation, summary judgment will be granted for defendant as to that claim as well.

---

[10] The policy does provide that a conviction is *prima facie* evidence of a violation, but the policy does not limit proof of a violation to convictions alone.  (Dkt. No. 26-1 at 8-9).

12

IV.     **Conclusion**

For the foregoing reasons, defendant's motion for summary judgment is GRANTED.

**So Ordered.**

/s/  F. Dennis Saylor IV

F. Dennis Saylor IV

Dated:  June 9, 2026                    United States District Judge

13